1833.

MORRIS
*v.*
KENT.

---

## MORRIS and another *v.* KENT.

A legacy to an executor given for care or pains is not to be regarded in the light of a debt or as founded in contract nor to be governed by the principles applicable to contracts. (And a legatee of this description must abate equally with other legatees.)

When a legacy is given to an executor, with the implied condition of performing services, the question generally is whether there has been a sufficient and faithful assumption of the character to entitle the party to it.

*It Seems*: where an executor is left a bequest for care and pains, he must be prompt to act and any unnecessary delay may be laid hold of by the Court to deprive him entirely of the legacy.

The Court may interpose as to a part of such a legacy. Thus: where a person was made executor and had a legacy left him for his care and trouble in executing the office; and he, at first, declined to serve, whereby the estate was put to the expense of an agent, but afterwards qualified, the master was ordered to deduct from the amount of the legacy such expenses as had been fairly caused by the appointment of the agent.

Gouverneur Morris, by his will bearing date the twenty sixth day of October, one thousand eight hundred and sixteen,

*February* 11.
1834.

*Executor.*
*Legacy.*

appointed his widow, the complainant, Mrs. Ann C. Morris, executrix and the defendant an executor; and accompanied it with a bequest to the latter in these words :—"hereby giving my said executor ten thousand dollars for his care and trouble in executing that office." Two days afterwards he made a codicil, by which he empowered the executor and executrix to borrow money upon mortgage of the whole or any part of the real estate, in order to pay debts, contract for the sale of unimproved lands, and execute deeds to purchasers upon such contracts as well as upon contracts then existing and made by the testator or his agent.

The Testator died in the month of November, one thousand eight hundred and sixteen; and his widow proved the will, took out letters testamentary, and qualified as executrix sometime in February one thousand eight hundred and seventeen. The estate was large, consisting principally of wild or partially settled lands; and the testator's affairs were involved in much difficulty and embarrassment owing to heavy debts and responsibilities. The defendant Moss Kent, being apprehensive there would not be enough of the estate left, after paying the debts, to satisfy his legacy or to compensate him for the care and trouble which would attend the discharge of his duties, hesitated about taking upon himself the office of executor; and at one period, actually resolved not to undertake the trust—and he so informed the widow. This was about the time she qualified as executrix. In consequence of his not taking upon himself the trust, the executrix was under the necessity of appointing an agent to attend to the affairs of the estate; and for this purpose she employed a professional gentleman, who continued in such agency about the space of a year. He, during this time, rendered important services to the estate; and for which he was afterwards paid the sum of four thousand dollars. But in the month of November one thousand eight hundred and seventeen, Mrs. Morris became dissatisfied with this agent and she then earnestly entreated the defendant to act in the busines of the estate, which he consented to do; and in May following he duly qualified as executor and took upon himself the active duties. He continued to discharge them down to the time of filing the bill, which took place in the

year one thousand eight hundred and twenty-nine—having received and disbursed a large amount of money on account of the estate and paid over various sums to the complainant, Mrs. Morris. A balance had remained in his hands, which he claimed a right to retain towards payment of the legacy of ten thousand dollars.

The bill was filed by the widow and son, who were principal devisees under the will of the testator, for an account; and they insisted upon the defendant's having no right to retain for the whole of his legacy. A reference, by consent, had been had to a master, to take and state the defendant's accounts and to enquire and report whether the defendant was entitled to the legacy of ten thousand dollars or to any and what part thereof and to any and what interest thereon. The master, in his report, allowed six thousand dollars to the defendant, being the balance of his legacy without any interest, after deducting the sum of four thousand dollars paid to the agent for services about the estate prior to the defendant's qualifying as executor or taking upon himself the office.

Two exceptions were taken by the defendant to the report: *the first*, because the master had not allowed him the whole sum of ten thousand dollars; and, *the second*, on account of the master not having allowed him interest upon the legacy from the time he qualified as executor until he was in the receipt of funds from the estate to satisfy it.

The cause now came before the court upon these exceptions.

Mr. *S. A. Foote* and Mr. *William Kent*, for the defendant and in support of the exceptions.

Mr. *Peter A. Jay* for the complainants.

THE VICE-CHANCELLOR:—The legacy is given to the defendant in his character of executor: it being expressly intended as a satisfaction for his care and trouble in executing the office. It is, therefore, a conditional legacy; and, according to the well-established rule in such cases, the defendant would not be entitled to claim payment without clo-

thing himself with the character of executor or, in other words, without accepting the office and undertaking to discharge its duties, This, the defendant has done; but not without hesitation, besides the delay of more than a year and even a refusal, at one period, to qualify. Such refusal, however, was not an absolute renunciation. He was still at liberty to qualify; and when he, at length, consented and took upon himself the executorship, there is no doubt it was done in good faith, with a determination to perform the services which might be required of him and not merely for the purpose of putting himself in a situation to claim the legacy. But, if, upon admitting the will to probate, he had promptly taken the office, a heavy expense, which has been incurred by the employment of an agent or a considerable portion of it might have been saved to the estate; and there appears to be no other reason for his refusal or delay in this respect than the apprehended insolvency of the estate and the fear, on his part, of not being able to realize the legacy after the debts were paid. The employment of an agent, in the mean time, became necessary. Although the widow had qualified as executrix, still it could not be expected she should attend in person to the various negociations and arrangements which the complicated affairs of the estate required in order to effect settlements. The testator probably foresaw the necessity of appointing a skilful and intelligent executor for these purposes and therefore nominated the defendant—at the same time providing for his remuneration. The like services which he was expected to render, have been performed in part by the agent, who, in this respect, may fairly be considered as substituted in the place of the executor for the time being.

The question then is, whether, under such circumstances, there should be a deduction from or an apportionment of the executor's legacy?

It must be admitted that where a specific sum is proposed as a compensation for an entire service and only a part is performed, it is but reasonable and just the reward should be apportioned to the extent of the service done. But it has been said, this principle of natural justice and equity is confined to matters of contract and does not apply as between

the testator and his executor in relation to a legacy for care and trouble, because such legacy is not a matter of convention or agreement, but proceeds from the mere bounty of the testator like any other legacy—that the executor is under no legal obligation to accept the office—he enters into no stipulation or agreement with his testator to this effect and may decline it if he chooses—and as the legacy is given to him in this capacity or is expressed to be for his care and trouble in executing the office, the law interposes no further than to attach to the gift an implied condition of his accepting the office, so that if the executor substantially complies with the condition, he becomes entitled to the bounty of the testator, and then there is to be no apportionment according to the degree of care and trouble or value and extent of services performed.  All this, as general doctrine, is doubtless correct.  A legacy to an executor even expressed to be for care and pains, is not to be regarded in the light of a debt or as founded in contract, or to be governed by the principles applicable to contracts.  If it were so, an executor, who takes upon himself the office and discharges its duties, would be entitled to his legacy in preference to all other legacies even if there were a deficiency of assets to satisfy all of them. But, so far from it, the point has been repeatedly determined and it is now settled law—that a legatee of this description must abate equally with other legatees : *Butler* v. *Coot*, Nelson's C. R. 142.; *Herne* v. *Herne*, Barnard. 434. 435.; *Fretwell* v. *Stacy*, 2. Vern. 434.; *Attorney General* v. *Robins*, 2. P. Wms. 25.

The question, then, does not depend upon the effect of the provisions in the will, as creating a debt or constituting a contract.  It is to be viewed in the light of a bequest upon condition of the services being rendered; coupled in this case, with a knowledge of their not having been entirely performed, although it may be that the condition has been substantially executed.  When a legacy is given to a person in the character of executor, so as to attach this implied condition to it, the question generally has been upon the sufficient assumption of the character to entitle the party to the same.  The cases establish the general rule that it will be a sufficient performance of the condition, if the legatee prove the will with a

1834.

MORRIS
v.
KENT.

bona fide intention to act under it or unequivocally manifest
an intention to act in the executorship, as, for instance, by
giving directions about the funeral of the testator, but is pre-
vented by death from further performing the duties of his
office : *Reed* v. *Devaynes,* 2. Cox, 285; *Harrison* v. *Row-
ley,* 4. Ves. 212 ; 1. Roper on Legacies, 521.; Williams
on Executors, 798.    But, if an executor takes the of-
fice upon himself and, by his subsequent conduct, shows an
intention not to execute the trusts but to use the office as a
means for enabling him to violate the confidence reposed in
him by the testator, he will not be entitled or permitted to
receive his legacy : *Harford* v. *Browning,* 1. Cox, 302.

In none of the cases, however, has an abatement or ap-
portionment, according to the services rendered, been made
a question.    They only go to the point of right, at first con-
ditional but becoming absolute.    The case of *Reed* v. *De-
vaynes,* supra, is much relied upon by the defendant's coun-
sel as showing that the court will look no further than to see
the right has become absolute by a bona fide acceptance of
the office and that when this has been done, it will, although
at a late day, allow the executor to receive his legacy.
There, as the case is reported by Mr. Cox, the legacy was
given in these words : " I appoint Devaynes and Smith, ex-
ecutors of my will, desiring them to accept of 100*l.* each as
a mark of my gratitude for the friendship they have shown
me."   Smith claimed his legacy, although he had not prov-
ed the will ; and said, in his answer, he never meant to prove
it.    Upon the first hearing of the case at the Rolls (3. Bro.
C. C. 95.) it was held that he could not have his legacy
without acting or, at least, proving the will ; but after this
decision and before the cause was brought on for further di-
rections, he took out probate : and it was then thought he
had sufficiently entitled himself to the legacy.    It cannot
but be observed, as to the case now under review, that, al-
though the one hundred pounds was considered a gift to each
of the persons as executors and, therefore, conditional, yet
the legacies were not expressed to be for care and pains or
by way of remuneration for services in executing the office,
but, on the contrary, were intended as a mark of the testa-
tor's gratitude for past friendship.   Nor was there any in-

timation or pretence of the estate's having been subjected to any loss or put to any expense by the delay or temporary refusal of the one executor to act and the other to perform all the services appertaining to the office. This decision can hardly be considered a precedent or authority for say-ing, that where a legacy to an executor is given in express terms for care and trouble in executing the office and to one of several executors and this one delays and, for a time, re-fuses to act whereby the estate is put to additional expense for services which the executor was expected to perform and for which the legacy was given, a court of equity should not interfere to lessen the amount of his legacy by charging him with what may fairly be considered the additional ex-pense brought upon the estate by such his delay or refusal.

No case has fallen under my observation which goes so far as to deny the right of this court to interfere with the amount of a legacy in a special case of this sort; and I think the present does call for interference. No principle of law or equity will be violated. In *Harrison* v. *Rowley*, supra, the M. R., speaking of the general rule that an executor must clothe himself with the character of executor, in order to entitle himself to receive a legacy, remarks, " if there is any circumstance to show he was backward in undertak-ing the trust reposed in him, he shall not have it"—thus, clearly implying the executor must be prompt to act and that any unnecessary delay may be laid hold of by the court to deprive him entirely of his legacy. Now, if it be so, the court may certainly interpose as to a part of the bequest.

But, each case is attended by its own peculiar circumstan-ces and must be determined accordingly. *Brydges* v. *Wotton*, 1. Ves. & B. 134., may be cited as an instance ; and my de-cision can, perhaps, be considered as proceeding upon a new rule which has arisen from the peculiar circumstances or, rather, as forming an exception to the general rule which previous cases may have established.

I think the master has decided correctly, namely, that the defendant's legacy should be liable to a deduction by reason of the necessity to which his refusal, in the first instance, subjected the executrix of employing an agent and of the ex-pense such agency occasioned. Still, I am not satisfied,

from the testimony before me, that he ought to be charged with the whole sum of four thousand dollars. This amount was fixed by way of compromise of the agent's claim; and the defendant was not a party to the settlement. He is not, therefore, bound to adopt it; and it may have been an extravagant allowance or more than, by a suit at law, the agent could have received. I infer the master did not inquire into the value of the services performed by the agent which were within the province of the executor and could equally as well have been performed by the defendant in that capacity or discriminate between charges which the agent might have made for services as such and the claims he might make in his professional character for legal advice and, consequently, a proper subject for extra-charge. Hence it becomes necessary to send this matter back to a master in order to make such discrimination, provided the facts will warrant it, and to ascertain what portion of the amount which was paid to the agent is fairly chargeable for services rendered as agent which the executor might have performed; and in ascertaining, upon this principle, the sum to be deducted from the defendant's legacy, regard should be had to the amount of the latter and to the whole service which the executor was to perform, so that the allowance for the agent's services for the time he was employed and the importance of his acts may not appear disproportionate to the whole of the services which were expected of the executor for the compensation of ten thousand dollars. There may be some difficulty in arriving at such a result. I understand the testator's son is now of age; and I would suggest, for the consideration of the parties, the expediency of settling this amount by compromise.

The next question is, as to interest upon the defendant's legacy, from the time he qualified as executor until he was in the receipt of funds which he could apply in satisfaction of it. Although there is no express direction in the will as to the time of payment, yet, considering the nature and object of the legacy, I think the intention must have been to postpone the payment until the executor should be in funds. Where such an intention is manifest, it is tantamount to this in effect; and a direction postponing the payment to a given

time or to the happening of some event, prevents the allowance of any interest until such period arrives. Besides, upon the principle which appears in *Adams* v. *Gale*, 2. Atk. 106., Mr. Preston, in his treatise upon Legacies, 281., expresses an opinion that an executor is never entitled to interest on his legacy, because he has the power of paying himself if the assets be adequate; and in *Reed* v. *Devaynes*, before cited, although interest on the legacy to the executor is stated to have been waived, yet the M. R. remarked, he thought, under the circumstances of the case, the executor might not be entitled to interest, but he would not lay it down as a general rule—there might be a case where it would be proper. Upon the whole, I think the master has decided correctly in saying the defendant is not entitled to any interest upon his legacy.